**In the Matter of Thomas J. ROEMER.**

**No. 683S197.**

Supreme Court of Indiana.

Nov. 22, 1983.

Thomas J. Roemer, South Bend, pro se.

Sheldon A. Breskow, Executive Secretary, William G. Hussman, Jr., Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent in this cause, Thomas J. Roemer, has been charged with conduct involving dishonesty, fraud, deceit or misrepresentation; with conduct that adversely reflects on his fitness to practice law; with failing to carry out a contract of employment with a client resulting in prejudice and damage to the client in the course of the professional relationship and with neglect of a legal matter entrusted to him. More specifically, the Respondent, in a Verified Complaint filed pursuant to Admission and Discipline Rule 23, Section 12, has been cited with violating Disciplinary Rules 1–102(A)(1), (4) and (6); 7–101(A)(2) and (3) and 6–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law.*

Pursuant to Admission and Discipline Rule 23, Section 11(d), the Disciplinary Commission of this Court and the Respondent now have tendered a Statement of Circumstances and Conditional Agreement for Discipline. The parties seek this Court's approval of the sanction of public reprimand for the alleged misconduct set forth under the agreement. Additionally, Respondent has submitted the requisite affidavit required by Section 17, of the above noted rule.

Under the tendered statement of circumstances, the parties in this proceeding agree that on April 18, 1982, the Respondent, an attorney admitted to practice in the State of Indiana, was retained to file a joint bankruptcy for the Blacks and was paid $360.00 for his services. The Respondent advised his clients that they would receive further information on the progress of the case by mail. After several months elapsed without contact, Mrs. Black attempted to contact Respondent on several occasions, but Respondent failed to return any calls or contact the Blacks in any manner for several months. During December, 1982, Earlie Mae Black talked with Respondent on the telephone. In that conversation, Respondent advised that he had "forgotten" the matter, but would file the petition shortly and would contact her with the cause number. From December, 1982, until March 7, 1983, the Respondent had not communicated with the Blacks and, although their petition and schedules in bankruptcy had been previously prepared, they had not been filed.

Under Count II of the Complaint filed in this cause, the parties agree that in January 8, 1978, the Respondent was retained by Gladys H. Skowronski (Gladys), to act as the attorney for the estate of Veronica Gorny. Gladys was designated Executrix under the terms of the decedent's will, which was approved and admitted into probate as decedent's last will, and was one of the major beneficiaries, the other being the husband of the Executrix's predeceased sister, the remaining seven beneficiaries were the designated daughter of decedent and the predeceased son, Joseph Gorny's children. The estate was opened on January 9, 1978, and assets were marshalled. By letter dated May 31, 1978, the Respondent informed Gladys that he hoped to close the estate in July, 1978.

When the five month claim period expired, the debts of the estate, and all bequests due the seven minor beneficiaries were paid, as were the Executrix' fees and the Respondent's legal fees, without court order. The remaining assets of the estate, consisting almost exclusively of one large tract of land, were devised to the two major beneficiaries under the terms of the will.

Respondent took no action to close the estate from May 31, 1978 until May 5, 1982. On May 5, 1982, the Respondent wrote to Gladys, informing her of the liability for

Indiana Inheritance Tax concerning this estate. Shortly thereafter, Gladys presented the Respondent with a $2,572.29 money order from Leonard Skowronski, payable to the St. Joseph County Treasurer, and a $534.66 money order from herself, payable to the St. Joseph County Treasurer, for payment of that liability. On May 14, 1982, the Respondent filed the Executrix's Final Account, Petition to Settle and Allow Account, Petition to Determine Heirship, and Petition for Authority to Distribute Estate.

On November 1, 1982 Gladys received a letter from the Inheritance Tax Administrator of the Indiana Department of Revenue, advising her that the Inheritance Tax had not been paid. Respondent did not present the above two money orders to the office of Treasurer until December 28, 1982, despite repeated requests and inquiries by Gladys. This late payment resulted in substantial interest penalties. On March 16, 1983, an Order was entered concerning the pending final account, approving all disbursements and directing that the sole remaining assets of any consequence, a tract of unimproved realty be the property of two said major beneficiaries, in accordance with the provisions set out in the will of decedent. On April 25, 1983, an Order was entered by the court approving the supplemental report of distribution, discharging the Executrix and Surety, Western Surety Company, closing this estate.

This Court in the past has noted the adverse consequences which result from professional neglect. See, *In re Jones,* (1983) Ind., 455 N.E.2d 903; *In Re Stivers,* (1983) Ind., 450 N.E.2d 531; *In re Morris,* (1982) Ind., 440 N.E.2d 675. A client has every reason to view the legal profession with displeasure and vexation when professional needs are ignored or met with procrastination. A client employs an attorney for his services, not to have his problems compounded by delay.

In view of the above considerations and by reason of the agreed statement of circumstances, this Court now finds that the Respondent engaged in professional misconduct and is therefore subject to discipline.

Under the Statement of Circumstances, the parties further agree in mitigation that "Respondent was hampered in his filing of the Blacks' bankruptcy petition by the fact that after he had prepared the petition and schedules in bankruptcy and after they had been signed by the Blacks the whereabouts of Mr. Black were unknown to the Respondent who had intended to search local records concerning an alleged automobile accident involving Mr. Black in 1981 which may have been reduced to judgment, this never subsequently confirmed. The Federal Bankruptcy rules were changed as of January 1, 1983, requiring the filing of bankruptcy petition and schedules in letter sized form rather than in the previously filed legal sized form, requiring a complete revision of the previously prepared petition and schedules of the Blacks. Subsequently Mrs. Black, on August 2, 1983, advised the Respondent that, not knowing of the whereabouts of her estranged husband, she had discarded the idea of filing bankruptcy, not having been herself employed for more than the past two years, and at that time one-half of the $300.00 legal fees, plus the $60.00 filing fees was returned to her. Mr. Black's whereabouts is yet undetermined and the understanding with Mrs. Black was that if and when he returned his one-half of the $300.00 legal fees would be returned to him or would serve as fees in his individual bankruptcy, if so desired."

With regard to Count II and the Gorny estate, the parties agree in mitigation that "Respondent did not commingle any funds given to him in connection therewith. The two checks given to him by the clients were drawn payable to the office of Treasurer and remained in the estate file until paid to the taxing authorities. Respondent personally paid all penalties and interest assessed against the Gorny estate as a result of the late filing of the return and payment, as well as the increased court costs occasioned by the delay, with the result that the estate and beneficiaries incurred no financial loss as a result of the late payment".

This Court does not find the fact that an attorney complied with our Disciplinary Rules concerning commingling to be a matter of extenuation or mitigation. Almost all attorneys comply with nearly all the Disciplinary Rules mostly all the time. We do not find a recitation of compliance to be beneficial in our determination. Had Respondent commingled funds, he would have been appropriately charged and sanctioned. This, however, is not the issue in this case.

Having found that the Respondent is subject to discipline for professional misconduct and considering all matters presented under this cause, this Court now approves the agreed discipline. Accordingly, it is hereby ordered that the Respondent be and he hereby is reprimanded and admonished.

Costs of this proceeding are assessed against the Respondent.